IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Richard M. Harris, <br>     Plaintiff, | : <br> : <br> : | NO. 3:12-cv-00674 |
| v. | : <br> : | (Caputo, J.) |
| Pennsylvania Board of <br> Probation & Parole, *et.al*, | : <br> : <br> : | (Saporito, M.J.) **FILED <br> WILKES BARRE** |
|     Defendants. | : | AUG 2 5 2015 |

## REPORT AND RECOMMENDATION

I. **INTRODUCTION:**

Plaintiff Richard M. Harris, an inmate presently confined at the State Correctional Facility Smithfield, in Huntingdon, Pennsylvania (SCI-Smithfield), initiated this civil rights action seeking declaratory and injunctive relief pursuant to 42 U.S.C. §1983. Following service of the Original Complaint (Doc. 1), Harris filed an Amended Complaint (Doc. 6) and Second Amended Complaint (Doc. 43). After responding to Harris' Second Amended Complaint by filing an Answer, (Doc. 57), and engaging in discovery, Defendants filed a motion for summary judgment. The motion, (Doc. 84), which is opposed by Harris, is ripe for resolution. (Docs. 88, 89, 93, 98).

Named as Defendants are the Pennsylvania Board of Probation & Parole (PBPP), and several current and former employees of the PBPP and Pennsylvania Department of Corrections (DOC), including: Kimberly Barkley (Parole Board Secretary), John Wetzel (DOC Secretary), B. Bowman (Parole Agent), Charles Smith (Parole Agent), Jon Fisher (Superintendent, SCI-Smithfield), Lisa Hollibaugh (Assistant Superintendent, SCI-Smithfield), Mandy Biser (Deputy Superintendent for Centralized Services of SCI-Smithfield), and Lisa Moffa (former Records Supervisor SCI-Smithfield). In his Second Amended Complaint, Harris alleges five claims: violation of the Ex Post Facto Clause of Article 1, Section 10, of the United States Constitution, (Count 1); violation of the Fifth Amendment to the United States Constitution's prohibition of double jeopardy, (Count 2); violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, (Count 3); violation of the due process clause of the Fourteenth Amendment to the United States Constitution, (Count 4); and claims of retaliation and denial of access to courts under the First Amendment to the United States Constitution, (Count 5). Counts one

through four are brought against the PBPP, and Defendants Barkley, Wetzel, Smith, Bowman, Fisher, Biser, and Moffa, and are related to the alleged miscalculation of Harris' eligibility for parole and improper denial of Harris' parole application. Count five is asserted against Defendants Hollibaugh and Fisher, and is related to a misconduct issued after contraband was discovered in Harris' cell.

In his brief in opposition, however, Harris has elected to withdraw counts 1, 2, 4, and 5. (Doc. 98 p. 10, n. 10). As such, per Harris' request, we recommend that counts 1, 2, and 4, against Defendants PBPP, Barkley, Wetzel, Smith, Bowman, Fisher, Biser, and Moffa, and count 5 against Defendants Hollibaugh and Fisher, be dismissed without prejudice. We also recommend that Defendant Hollibaugh be dismissed from this case, as the only claim against her has been voluntarily withdrawn by Harris.

The only remaining claim in this case is Harris' Fourteenth Amendment equal protection claim asserted against Defendants PBPP, Barkley, Wetzel, Smith, Bowman, Fisher, Biser, and Moffa.

For the reasons stated herein, we recommend that Defendants'

motion for summary judgment be **granted in part** and **denied in part**.

II.   LEGAL STANDARD:

Rule 56(a) of the Federal Rules of Civil procedure provides that:

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.   The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law.   The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a).   Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(c).   For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might "affect the outcome of the suit under the governing law".   *Haybarger v. Laurence Cnty. Audit Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012)(*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of

truth at trial. *Id. (quoting Anderson, 477 U.S. at 248-49).*

To support a motion for summary judgment, the movant must demonstrate that, if the evidence were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has satisfied this burden, "its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). Instead, if the movant has carried its burden, the non-moving party must show a genuine issue for trial, and may not rely upon the allegations or denials in the pleadings. *Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *See also* Fed. R. Civ. P. 56(c).

In adjudicating a motion for summary judgment, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. V. BMW North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the evidence

presented by the movant, then the non-movant's evidence must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one said or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could

return a verdict for the non-movant on the evidence presented. *Anderson*, 477 U.S. at 252; *see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact ... the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the provenance of that factfinder to ascertain the believability and weight of the evidence.

*Big Apple BMW*, 974 F.2d at 1363. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Marsushuta Elec. Indus. Co,, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 665 F.3d 464, 475

(3d Cir. 2011).

## III. STATEMENT OF FACTS:

While serving a criminal sentence in Virginia in March 1990, Harris was extradited to Pennsylvania on charges stemming from criminal activity that he engaged in during two days spent in Pennsylvania in May 1988. (Doc. 93 ¶1; Doc. 98 p. 28 ¶1); *see also* (Doc. 89-2 p. 3 ¶¶16-19). On March 20, 1990, Harris pleaded guilty to charges of robbery (count one), theft by unlawful taking (count two), kidnaping (count three), rape (count four), involuntary deviate sexual intercourse (count five), conspiracy to commit robbery (count six), and conspiracy to commit rape (count seven). (Doc. 93 ¶2; Doc. 98 p. 28 ¶2); *see also* (Doc. 89-1; Doc. 89-2). Counts one and two were merged for sentencing purposes. (Doc. 89-1 p. 1).

On count one, robbery, Harris was sentenced to ten to twenty years, and it was ordered that this sentence would commence and be computed from the date of his return to Pennsylvania after serving his sentence in Virginia. (Doc. 93 ¶3; Doc. 98 p. 28-29 ¶3); *see also* (Doc. 89-1 p. 1; Doc. 89-2 p. 28). Harris does not dispute that the sentence

imposed under count one was scheduled to commence upon his return to Pennsylvania, he does however dispute that his sentences on several of the remaining counts were similarly delayed. (Doc. 98 p. 28-29 ¶3). The sentencing transcript, and Harris' court commitment papers describe his remaining sentences as outlined below.

On count three, kidnaping, Harris was sentenced to ten to twenty years, and it was ordered that this sentence run consecutive to the sentence imposed on count one. (Doc. 89-1 p. 3; Doc. 89-2 p. 28). It was not specified in the commitment documents whether the sentence imposed under count three was intended to run concurrent or consecutive to Harris' existing sentence in the state of Virginia, the "effective date of sentence" on this count and all others (including count one) was listed as March 20, 1990. (Doc. 89-1 p. 3).

On count four, rape, Harris was sentenced to ten to twenty years, and it was ordered that this sentence be served concurrently with the sentence imposed on count one. (Doc. 89-1 p. 3; Doc. 89-2 p. 28-29).

On count five, involuntary deviate sexual intercourse, Harris was sentenced to ten to twenty years. (Doc. 89-1 p. 4; Doc. 89-2 p. 28-29).

This sentence was ordered to run concurrent to count three, and consecutive to count four. *Id.*

On count six, criminal conspiracy to commit robbery, Harris was sentenced to five to ten years, and it was ordered that this sentence run concurrent with count one. (Doc. 89-1 p. 4; Doc. 89-2 p. 29).

On count seven, criminal conspiracy to commit rape, Harris was sentenced to five to ten years, and it was ordered that this sentence run concurrent with count four. (Doc. 89-1 p. 4; Doc. 89-2 pp. 29-30).

Although he asserts that it is not material, Harris does not otherwise dispute that he was instructed that the aggregate sentence imposed was twenty to forty years, to begin and be computed from the date he is paroled in Virginia. (Doc. 93 ¶¶4-5; Doc. 98 ¶¶4-5); *see also* (Doc. 89-2 p. 30).

Harris returned to Pennsylvania on August 19, 1998, after he was paroled in Virginia. (Doc. 93 ¶6; Doc. 98 ¶6).

On September 16, 2004, Harris pleaded guilty to a charge of terroristic threats. (Doc. 93 ¶7; 98 ¶7); *see also* (Doc. 89-4). Harris

was sentenced to one to three years, to be served consecutive to his existing sentences. *Id.*; *see also* (Doc. 89-4 p. 9). Although he asserts it is not material, Harris does not otherwise dispute the fact that during the sentencing hearing which took place on September 16, 2004, he acknowledged that he was currently serving an aggregate sentence of 20 to 40 years, and that in 2004 he had served approximately six years of that sentence. (Doc. 93 ¶¶8-9; Doc. 98 ¶¶8-9); *see also* (Doc. 89-4 pp. 7-8).

A sentence status summary generated by the DOC on October 7, 2004, lists the effective date of all of the March 1990 sentences as August 19, 1998. (Doc. 98-3 p. 4). The expiration of Harris' minimum sentence is listed as August 19, 2019. *Id.*

The DOC has established a three-tiered grievance system, the procedures of which are outlined in the DC-ADM 804 Procedures Manual. (DC-ADM 804). (Doc. 93 ¶¶17-18; Doc. 98 p. 32 ¶17-18).[1]

_____

[1] Paragraphs 11 through 16, and paragraph 30, of Defendants' statement of material facts relate to Harris' First Amendment claim, claim 5 in his Second Amended Complaint. Although Harris appears to dispute the facts alleged by Defendants as they relate to this claim, as noted above Harris has voluntarily withdrawn this claim. *See Doc.* 98 p. 10 n. 10. As such, we find that these facts are not material to the disposition of Defendants' motion as it relates to Harris' remaining claim.

10

This system serves as an inmate's administrative remedy for grievances, and consists of: (1) an initial review by a Facility Grievance Coordinator; (2) appeal to the Facility Manager or Superintendent; and, (3) appeal to the Secretary's office for final review. (Doc. 93 ¶¶21-24; Doc. 98 pp. 32-33 ¶¶21-24). Further, this system requires that an inmate specifically state any claims he or she wishes to make concerning violations of Department directives, regulations, court orders, or other law, and identify the individuals directly involved in the events being grieved. (Doc. 93 ¶¶19-20; Doc. 98 p. 32 ¶¶ 19-20).

On March 19, 2012, Harris filed a request slip addressed to Defendant Smith in which he requested that he be scheduled for a parole hearing. (Doc. 98-4 p. 2).

On April 2, 2012, Harris filed Grievance No. 407143-12 relating to his objections to the calculation of his sentence. (Doc. 93 ¶27; Doc. 98 p. 33 ¶27). Harris pursued Grievance No. 407143-12 through all three levels of administrative review. It was rejected on the merits at each level of review. (Doc. 93 ¶¶28-29; Doc. 98 p. 33 ¶¶28-29). In his grievance, Harris alleged that he had completed his minimum sentence

as of March 20, 2011, and had not been scheduled for a parole hearing. (Doc. 89-6 p. 27). In section B of this grievance, Harris reported that he had contacted Defendant Smith requesting a hearing, but did not receive a response. *Id.* Harris also alleged that the "failure to provide [him] with a parole hearing is contrary to state law and is in violation of [his] rights to due process and equal protection as it appears to be the result of racially discriminatory practices designed to delay and/or deny parole review to African-American inmates through the application of arbitrary criteria relating to parole eligibility that are inconsistent with applicable law and not applied to non-minority inmates." *Id.*

Within a few days of filing his grievance, Harris received a response to his inmate request. (Doc. 98-4 p. 2). In the response, dated April 2, 2012, Defendant Bowman informed Harris that his minimum sentence would not be complete until August 19, 2019. *Id.* Similarly, his grievance was denied at each level of review on the basis that his sentence summary reflected that his minimum date was August 19, 2019. (Doc. 89-6 p. 28, 31, 33).

## IV. DISCUSSION:

In his second amended complaint, Harris alleges that he submitted an inmate request form requesting review of his eligibility for parole based on his belief that he served his minimum sentence on March 20, 2011. (Doc. 43 ¶¶ 22, 23, 24). He also alleges that his application for a parole hearing was not processed in the manner prescribed by PBPP Procedure 3.02.03, which mandates that his request be submitted to the board secretary or her designee for a determination as to whether Harris was eligible for parole, (Doc. 43 ¶¶25-26), and that his sentence was not calculated in a manner consistent with the agency policies in effect on the date he was sentenced. (Doc. 43 ¶¶34-37). Harris, an African American, also asserts that Defendants willingly corrected such errors for similarly situated white inmates, but refused to do so for him, (Doc. 43 ¶39), and instead consulted documents outside of his commitment papers (his sentencing transcript) to clarify sentencing ambiguities without consulting the sentencing judge– a policy which is not applied with equal force to white inmates. (Doc. 43 ¶40).

Harris alleges that his application for a parole hearing was improperly denied based on a sentence status summary provided by Defendants Smith, Moffa, and/or Bowman. (Doc. 43 ¶26). Harris alleges that Defendants Smith and Bowman lacked the authority under PBPP 3.02.03(vi)(A)(2)(b) to deny Harris' parole application, but did so anyway. (Doc. 43 ¶28). Harris alleges that he submitted request slips to Defendants Moffa and Biser, who are responsible for calculating his sentence, and that they failed to take action to resolve the alleged error. (Doc. 43 ¶42). Harris alleges that Defendant Fisher improperly denied his grievance on this issue. (Doc. 43 ¶¶44-45). Harris alleges that the failure of Defendants Moffa, Biser, and Fisher to correctly calculate his sentence is the result of racial animus. (Doc. 43 ¶46). Last, Harris alleges that his minimum sentence was incorrectly calculated based on new procedures promulgated by Defendants Barkley and Wetzel that were not in effect on his sentencing. (Doc. 43 ¶37).

Defendants asserts that they are entitled to summary judgment on Harris' equal protection claim because: (A) the PBPP is not a proper Defendant in a §1983 claim; (B) Harris failed to provide evidence of

Defendants' personal involvement; (C) Harris failed to exhaust his administrative remedies; (D) Harris presented no evidence that he has been treated differently than similarly situated individuals or was treated differently because of his race.

Section 1983 of Title 42 of the United States Code provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. §1983. Although it is a vehicle for enforcing violations of federal rights either conferred by the United States Constitution or federal statute, it is not itself a source of any substantive rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Kneipp v. Teddler*, 95 F.3d 1199, 1204 (3d Cir. 1996). In order to prevail in an action under section 1983, Harris must demonstrate: (1) he suffered a violation of a right secured to him by the Constitution or the laws of the United States; and (2) that the alleged violation was committed by a person acting under the color of state law. *Nicini v. Morra*, 212 F.3d 798, 806

(3d Cir. 2000).

## A.   §1983 Claim Against PBPP

Defendants argue that the PBPP is not a "person" as contemplated by 42 U.S.C. §1983, thus Harris has failed to satisfy the second element of his §1983 claim against Defendant PBPP.   (Doc. 88 p. 17). Because it is not a "person," it cannot be sued under §1983.   *See Thompson v. Burke*, 556 F.2d 231 (3d Cir. 1977).

## B.   Personal Involvement

Defendants argue that Harris has failed to offer evidence of each Defendant's personal involvement in the alleged constitutional deprivation.   (Doc. 88 pp. 9-12).   To prevail on a §1983 claim, a plaintiff must demonstrate that each defendant was personally involved in the alleged wrongdoing.   *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Id.* Moreover, it is well-established that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were agency supervisors when the incidents set forth in the

complaint occurred.   As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.... *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *see also Dunlop v. Munroe*, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); *Robertson v. Sichel*, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.   Here, Harris has not offered any evidence, or even alleged, that Defendants Barkley or Wetzel directed their subordinates to commit the constitutional violation alleged, or knew of and acquiesced in them.

17

Further, to the extent that Harris alleges that Defendants Barkley and Wetzel promulgated any constitutionally deficient policy, Harris has failed to specifically identify any such policy. Thus, it is recommended that Defendants Barkley and Wetzel be dismissed from this action.

Harris' only allegations regarding Defendant Fisher's involvement is that Defendant Fisher denied Harris' grievance. Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. *See Rode*, 845 F.2d at 1208; *Brooks v. Beard*, 167 F.App'x. 923, 925 (3d Cir. 2006)(holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to, a prison grievance did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). Similarly, Harris has failed to offer any evidence supporting his allegation that Defendant Smith was involved in the improper rejection of Harris' parole application or the calculation of his sentence. The record reflects that, although Harris submitted a request slip – which served as his parole application – to Defendant Smith, it was responded to by Defendant

Bowman. Thus, it is recommended that Defendants Fisher and Smith be dismissed as parties in this action.

As for the remaining Defendants (Bowman, Moffa, and Biser), Harris has provided evidence – in the form of his own sworn statement – that Defendants were involved in the calculation of his sentence and the denial of his application for parole. At this stage of the proceedings, we are required to accept this evidence as true, and as such the court finds that this is sufficient to establish their personal involvement in the constitutional violation alleged.

C.    Exhaustion of Administrative Remedies

Defendants argue that Harris failed to exhaust administrative remedies because he failed to name in his grievance any of the Defendants named in his second amended complaint. (Doc. 88 pp. 20-23). Given the circumstances of this case, however, we conclude that Harris' failure does not amount to a procedural default barring his claim.

42 U.S.C. §1997(e) does not impose a name-all-defendants requirements, and "exhaustion is not *per se* inadequate simply because

an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Rather, an inmate is required to comply with the requirements of the prison's grievance system. *Id.* Here, as previously set forth, DC-ADM 804 provides that "[t]he inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." *DC-ADM 814(1)(A)(11)* (Doc. 89-6 p. 12).

In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Third Circuit analyzed a prior version of DC-ADM 804, which articulated a less stringent policy for the identification of individuals involved in the events that give rise to a grievance. That prior version of DC-ADM 804 provided, in pertinent part, that: "[t]he inmate shall include a statement of facts relevant to the claim ... The inmate *should* identify specific persons, if practicable." *Spruill*, 372 F.3d at 233 (*emphasis added*). Even based on this more permissive language, the Court observed that "the text is mandatory, or nearly so," and held that an unexplained

failure to identify a responsible prison official in a grievance may constitute a procedural default of the claim. *Id.* at 234. The Court of Appeals added that the prison's grievance process could excuse such a procedural default by identifying an unidentified person and acknowledging that the unnamed person was fairly within the scope of the inmate's grievance, *or* an inmate could do so by offering a justifiable excuse.

At this stage of the proceedings, Harris' averment that he was not aware of the names of the individuals responsible for calculating his sentence, or the individuals involved in the denial of his request for a parole hearing must be accepted as true. As such, because Harris has explained why he was unable to name the remaining Defendants on the date he filed his grievance, we recommend that Defendants' request for summary judgment on the basis of Harris' failure to properly exhaust his claim against the remaining Defendants be denied.

### D.   Constitutional Violation

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne*

*v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Two independent legal theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory. The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as race. *See e.g., Id.*; *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964). To assert a protected-class claim, the plaintiff must demonstrate: (1) that he is a member of a protected class; and, (2) that the government treated similarly situated individuals outside of the protected class differently. *See Oliveira v. Twp. of Irvington,* 41 F.App'x 555, 559 (3d Cir. 2005)(observing prima facie case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals."). Under this theory a plaintiff "must prove the existence of purposeful discrimination" by defendants. *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992).

Under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff

shows that the defendants engaged in irrational and intentional differential treatment of him when compared with similarly situated individuals. *See Village of Wilowbrook v. Olech*, 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats plaintiff differently from similarly situated individuals. *Id.* at 564; *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). To prevail on a class-of-one claim, the plaintiff must demonstrate that: (1) the defendants treated him differently from others similarly situated; (2) the defendants did so intentionally; and, (3) there was no rational basis for the difference in treatment. *Hill*, 455 F.3d at 239.

Defendants contend that "Harris has presented no evidence that he has been treated differently from similarly situated individuals, let alone that his treatment was based on race." (Doc. 88 p. 18). In his opposition, however, Harris submitted several sworn statements rebutting Defendants' argument. Specifically, Harris submitted declarations, by himself and other inmates, in which they attest that the procedures used to resolve the inconsistency between Harris'

commitment papers and sentence status summary were highly irregular based on his personal knowledge of how such issues are typically handled. (Doc. 98-1 pp. 16-18); (Doc. 98-5 pp. 4-5); (Doc. 98-6). This evidence is sufficient to create a genuine issue of material fact on the issue of whether Harris' requests for clarification of an issue relating to the calculation of his sentence was handled differently than other inmates in general, or other white inmates in particular. Accordingly, it is recommended that Defendants' motion, as it applies to the remaining Defendants be denied.

V.   RECOMMENDATION:

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1)   the following claims be dismissed without prejudice in accordance with Harris' request:

(A) Ex Post Facto Clause Claim (Count 1);

(B) Double Jeopardy (Count 2);

(C) Fourteenth Amendment Due process claim (Count 4); and

(D)   First Amendment retaliation and access to courts claim (Count 5);

(2)   the following Defendants be dismissed from this action:

(A)   Defendant Hollibagh, because the only claim alleged against her has been voluntarily withdrawn by Harris;

(B)   The PBPP, because it is not a properly named Defendant in a §1983 action;

( C)   Defendant Barkley be dismissed due to a lack of personal involvement in the alleged constitutional violation;

(D)   Defendant Wetzel be dismissed due to a lack of personal involvement in the alleged constitutional violation;

(E)   Defendant Fisher be dismissed due to a lack of personal involvement in the alleged constitutional violation;

(F)   Defendant Smith be dismissed due to a lack of personal involvement in the alleged constitutional violation; and

(3)     Defendants' motion for summary judgment on Count 3 as it

relates to Defendants Bowman, Moffa, and Biser be DENIED.


Joseph F. Saporito, Jr.
U.S. Magistrate Judge

Dated: August 24, 2015

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Richard M. Harris
      Plaintiff,

    v.

Pennsylvania Board of
Probation & Parole, *et.al*,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:

NO. 3:12-cv-00674

(Caputo, J.)
(Saporito, M.J.)

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing Report and Recommendation dated August 24, 2015. Any party may obtain a review of this Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such

objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Joseph F. Saporito, Jr.
U.S. Magistrate Judge